THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| REBECCA A. FISHER, | ) | Case No.   2:16-cv-00054-DS |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | MEMORANDUM DECISION |
| CAROLYN W. COLVIN, | ) | AND ORDER |
| Acting Commissioner Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## I.  INTRODUCTION

Plaintiff Rebecca A. Fisher filed an application for Social Security benefits alleging a disability beginning November 5, 2011, with a date last insured of December 31, 2012. Her application was denied initially and on reconsideration.  After an administrative hearing, an administrative law judge ("ALJ") concluded at step four of the five-part sequential evaluation process[1], that Plaintiff was unable to perform any past relevant work. At step five, the ALJ found that Ms. Fisher was not disabled for purposes of the Social Security Act because with her residual functional capacity, age, education, and work

---

[1] *See* 20 C.F.R. § 416.920.  *See also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988)

experience, she could perform other jobs existing in significant numbers in the national economy.[2] Plaintiff's request for review was denied by the Appeals Council.

Ms. Fisher now seeks judicial review of the decision of the Commissioner of Social Security denying her claim for benefits. She contends that the ALJ erred in that: (1) he failed to consider her severe and non-severe impairments when determining her residual functional capacity, (2) he failed to give proper weight to her treating physician, and (3) his decision was not supported by substantial evidence.

## II. STANDARD OF REVIEW

The Court reviews the ALJ's decision only to determine if the factual findings are supported by substantial evidence and if he applied the correct legal standards. *Goatcher v. United States Dep't of Health & Human Servs.*, 52 F.3d 288, 289 (10th Cir. 1995). Substantial evidence is "more than a mere scintilla," and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). The Court may not re-weigh the evidence or substitute its judgment for that of the Commissioner. *Kelley v. Chater*, 62 F.3d 335, 337 (10th Cir. 1995).

---

[2]The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months". 42 U.S.C. § 423(d).(1)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just h[er] underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)(citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

### III.  DISCUSSION

**A.  Evaluation of Impairments - RFC Determination**

The ALJ found Ms. Fisher's depressive disorder and borderline intellectual functioning to be sever impairments.  However, he determined that "claimant's degenerative joint disease (knee), diabetes mellitus, non-displaced 5th metatarsal head fracture, scapulohumeral fibrositis/impingement, rib fracture, and low back pain nonsevere."  Tr. 12-13.

Ms. Fisher first urges that the ALJ failed to support his decision with substantial evidence because "[a]lthough finding several 'non-severe' physical impairments at Step 2, the ALJ failed to consider these physical impairments in combination with the severe mental impairments when determining Plaintiff's residual functional capacity (RFC)."  Op. Br. at 12.  Specifically, she urges that the ALJ "failed to properly consider her degenerative joint disease of the knee, non-displaced 5th metacarpal requiring surgery, osteoarthritis, and impingement arthritis in the shoulder, gait disturbance, and borderline intellectual functioning with impaired reading and writing."  *Id*. at 13.

The RFC is an assessment of what a claimant is still "functionally capable of doing on a regular and continuing basis despite [her] impairments: the claimant's maximum sustained work capability."  *Williams v. Bowen*, 844 F. 2d 748, 751 (10th Cir. 1988).  The ALJ must make specific RFC findings based on all the relevant evidence in the case record.  *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996):SSR 96-8p, 1996 WL 374184, at *5 (July2, 1996).  In determining the scope of a claimant's RFC, an ALJ's assessment will consider all of a claimant's medically determinable impairments including her medically determinable impairments that are not severe.  20 C.F.R. § 404.1545.

In making his RFC determination, the ALJ stated that he "considered all symptoms and the extent to which these symptoms can reasonable be accepted as consistent with the objective medical evidence and other evidence, based on the requirements," and that he "also considered opinion evidence in accordance with the requirements". Tr. 15. In doing so, he cites the two-step process for evaluating both physical and mental impairments. Tr. 15. "Where, as here, the ALJ indicates he has considered all the evidence our practice is to take the ALJ at his word." *Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009)(alternation and internal quotation marks omitted). Accordingly, the Court will not find that the ALJ ignored Ms. Fisher"s non-severe physical impairments in making his RFC assessment.³

The Court also rejects Ms. Fisher assertion that the ALJ erred because he did not reasonably consider her subjective complaints in evaluating her RFC. "'Credibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations when supported by substantial evidence.'" *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)(quoting *Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990)). In evaluating a claimant's evidence of pain the following framework is employed: "(1)whether Claimant established a pain-producing impairment by

---

³Further, the ALJ reasonably could conclude from the record evidence that Ms. Fisher's non-severe physical impairments did not result in any work-related physical limitations from the alleged onset date to the date last insured. *See, e.g.*, Tr. 234, 237, 241, 245, 247, 252-53, 349-50. That also was the conclusion of Doctors Farwell and Hotley, state agency physicians who reviewed the evidence, and found that Ms. Fisher did not have a severe physical impairment from the alleged onset date through her date last insured. (Tr. 39-49, 51-61). *See also* Ans. Br. at 15-16 (discussing substantial evidence of record)

objective medical evidence; (2) if so, whether there is a loose nexus between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling." *Rose v. Colvin,* 634 Fed. Appx. 632, 638 (10Th Cir. 2015) (citation omitted).

The ALJ found "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (Tr. 18). That determination is affirmatively linked to substantial evidence in the record. *See* Tr. 12-13, 15-18. *See also* Ans. Br. at 21-22 (outlining relevant evidence). Because the ALJ set forth valid reasons for discounting Ms. Fisher's subjective complaints, the Court cannot conclude that he did not reasonably consider her subjective complaints in evaluating her RFC and the Court finds nothing amounting to legal error.

The Court also rejects Ms. Fisher's assertion that the ALJ failed to properly consider her depression, borderline intellectual functioning and impaired reading and writing when determining her RFC. The ALJ concluded that Ms. Fisher had the RFC to do a full range of work at all exertional levels "but with the following nonexertional limitations: the claimant can only make simple work-related judgments and decisions. She can understand, remember, and carry out only short and simple instructions. She can have only occasional interactive contact with the public, co-workers and supervisors. The claimant can perform goal-oriented, but not fast paced work." Tr. 15. The ALJ discussed his reasons for his conclusions citing to evidence of record which can be viewed as reasonably supporting those conclusions. *See* Tr. 15-18. Accordingly, the Court finds no legal error.

## B. Evaluation of Treating Physician Dr. Wood's Medical Opinion

The Court rejects Plaintiff's claim that the ALJ improperly evaluated the opinions of Dr. Wood her treating physician. When weighing a treating physician's opinion, the ALJ follows a sequential analysis. "An ALJ must first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques.... If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence of record." *Watkins v. Barnhart*, 350 F.3d 1287, 1300 (10th Cir. 2003) (internal quotation marks and citation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." *Id.* If no opinion is entitled to controlling weight, the agency considers several factors in deciding how much weight to give an opinion, including the nature of the medical source's relationship with the claimant, supportability, consistency, specialization, and any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(1)-(6).

The ALJ cited to the regulatory framework for evaluating medical source opinions. Tr. 15. He noted that a number of Dr. Wood's opinions are outside the alleged onset date of November 5, 2011 and the date last insured December 31, 2012. Tr. 15-16. *See* 20 C.F.R. § 404.1527(c)(6) (stating an ALJ may consider other factors); *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (medical evidence from an earlier period, outside the current insured period, may be considered to the extent it sheds light on the nature and severity of clamant's condition during the relevant time period); *Bannister v. Astrue*, 730 F. Supp 2d 946, 951 (S.D. Iowa 2010) (quoting *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006) ("[r]ecords and medical opinions from outside the insured period can only be used in 'helping to elucidate a medical condition during the time for which benefits might be

rewarded'"). The ALJ discussed Dr. Wood's relevant opinions but found them inconsistent with the objective evidence of record, including Dr. Woods own findings. *See, e.g.*, Tr. 233-34, 236-37, 239, 241, 243, 245-47, 249, 252-53, 255, 258-60. *See, Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994) (ALJ reasonably discounted treating physician opinion which was not supported by his own notes). Dr. Wood's opinion as to Ms. Fisher's abdominal pain could also be viewed as inconsistent with the opinion of Dr. Livers. Tr. 349-50. *See Raymond v. Astrue*, 621 F.3d 1269, 1272 (10th Cir. 2009) (ALJ reasonably discounted treating physician opinion which was inconsistent with other medical evidence). In sum, the ALJ cited record evidence and testimony from which he could reasonably conclude that Dr. Wood's relevant opinions were entitled to little weight.

### C. Substantial Evidence - Alleged Factual Inaccuracies and Speculation Allegedly Relied Upon by the ALJ

Lastly, Plaintiff contends that the ALJ's decision was based upon a number of factual inaccuracies and upon speculation about Plaintiff's future medical condition, and therefore, was not supported by substantial evidence. Each of Ms. Fisher's positions is rejected in turn.

As the Commissioner notes, Ms. Fisher's assertion that the ALJ was not allowed to speculate on how future foot surgery would affect her functioning, if error, was harmless because "despite the ALJ's statement, Dr. Howe's report dated February 6, 2014 was more than a year after the date last insured (Tr. 407) [and] ... simply not relevant to the period at issue. Thus, any arguable deficiency does not detract from the substantial evidence supporting the decision." Ans. Br. at 11. *See Shinseki v. Sanders*, 556 U.S. 396,

409 (2009) ("the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."(citations omitted)).  Ms. Fisher has not established that error, if any, was harmful..  Additionally, Ms. Fisher's position that she had a foot impairment that met the 12-month durational requirement can be viewed as not supported by the record because she sought no treatment for foot impairment during the relevant time period.  *See, e.g.,* Tr.233- 234, 236-238, 239-241, 241-247, 249-254.

Ms. Fisher's argument, that the ALJ erred in his step two analysis when he stated that her osteoarthritis was a non-medically determinable impairment because there was no diagnosis of osteoarthritis from an acceptable medical source during the relevant period, is also rejected.  The Court agrees with the Commissioner's position that the record plaintiff relies on establishes only that osteoarthrosis  "was a 'chronic problem' with a date of onset of June 6, 2012 (Tr. 230-31), five months prior, again showing that the duration requirement was not met. ... Thus, any apparent oversight does not affect the outcome." Ans. Br. at 12.  *See* 20 C.F.R. §§ 404.1520(a)(4)(ii),(c) (discussing medical severity requirements).

Plaintiff generally asserts that "the ALJ should have considered the record longitudinally", Op Br. at 21, instead of limiting his review of the record from the alleged onset date to her date last insured.  Citing to a November 14, 2011 visit to Dr. Wood, Ms. Fisher urges that "[a] proper reading of the longitudinal record shows long-term debilitating mental illness, which continued to increase in severity. Tr. 258". Op. Br. at 21.  The Court is not persuaded by Ms. Fisher's position that any error was committed.  The record reflects that the ALJ reviewed record evidence outside the onset date and the date last

insured. *See* Tr. 12-18. Including Ms. Fisher's November 2011 visit to Dr. Wood. Tr. 16. However, the ALJ noted the following.

> Under the Regulations, the relevant period for Title II applications begins at the claimant's alleged onset date and ends as of the claimant's date last insured. The claimant produced medical evidence of record from August 2011 through May 2014. Under the Regulations, however, only the medical records for the relevant period are considered in a claim for benefits under Title II. Thus, the undersigned based this decision on consideration of the records of medical treatment between the claimant's alleged onset date and date last insured. Records of treatment prior to the alleged onset date and after the date last insured are not considered relevant to this decision except for the limited purpose of establishing a context for medical treatment during the relevant period.

Tr. 15 -16. Ms. Fisher has not established that the ALJ interpreted or applied the law or regulations improperly. *See*, e.g., *Hamlin v. Barnhart*, 365 F.3d 1208, 1217 (10th Cir. 2004) (medical evidence beyond the date last insured may be considered to the extent it sheds light on the nature and severity of clamant's condition during the relevant time period); *Bannister v. Astrue*, 730 F. Supp 2d 946, 951 (S.D. Iowa 2010)(quoting *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006) ("[r]ecords and medical opinions from outside the insured period can only be used in 'helping to elucidate a medical condition during the time for which benefits might be rewarded'"); *Brown v. Colvin*, 992 F. Supp. 2d 947, 955 (D. Neb. 2014) (same); SSR 96-7p,[4] 1996 WL 374186, (longitudinal medical record valuable in evaluation of an individual's symptoms or statements about pain).

Ms. Fisher's position, that the ALJ erred in relying on the vocational expert's testimony because he asked her to assume a younger individual with her education and

---

[4] The Court relies on SSR 96-7p in effect at the time of the ALJ's decision, although it was superseded by SSR 16-3p, 2016 WL 1119029, on March 16, 2016.

work experience, when she was in fact an individual approaching advanced age, likewise, fails. The record reflects that the ALJ requested the vocational expert to "assume a younger individual **with Ms. Fisher's age**, education, and work history." Tr. 33 (emphasis added). In any event, the Court also agrees with the Commissioner that error, if any, was harmless because jobs cited by the vocational expert required medium or light exertion (Tr. 33) and "[u]sing the framework of Grid Rule 203.18, an individual of Plaintiff's age on the date last insured, education, and work experience who could do medium work is 'not disabled'. See 20 C.F.R. pt. 404, subpt. P, app. 2, Table No. 3. Thus, any arguable misstatement does not affect the outcome. " Ans. Br. at 24.

Plaintiff's final assertion, that it was unreasonable for the ALJ to find that she could perform all levels of exertion and that the ALJ was required to consider both her severe and non-severe impairments when determining her RFC, has been previously considered and rejected. *See* Section III A. above.

## IV. CONCLUSION

Based on the foregoing reasons, as well as generally for the reasons set forth in the Commissioner's opposing memorandum, the Court concludes that the Commissioner's decision, that during the relevant period Plaintiff Rebecca A. Fisher was not disabled within the meaning of the Social Security Act, is supported by substantial evidence of record and is not the result of any legal error which has been brought to the Court's attention.

Therefore, Ms. Fisher's Complaint is dismissed and the Commissioner's decision to deny her application for Social Security benefits is affirmed.

IT IS SO ORDERED.

Dated this 2nd day of February, 2017

BY THE COURT:

_David Sam_
DAVID SAM
SENIOR JUDGE
UNITED STATES DISTRICT COURT